UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x

NICOLA COLELLA on behalf of
himself and classes of those        :
similarly situated, et al.,
                                    :

           Plaintiffs                   REPORT & RECOMMENDATION
                                    :
      -against-                         12cv6041 (GBD)(MHD)
                                    :
NEW YORK CITY TRANSIT AUTHORITY,
et ano.,                            :

           Defendants.          :
--------------------------------x

12/2/14

TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:


On August 7, 2012, plaintiff Nicola Colella filed a collective action in this court under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., on behalf of himself and other employees who worked as either "Line Supervisors" or "Maintenance Supervisors" for defendants in the three years preceding the filing of the complaint and thereafter. (See Compl. ¶¶ 1-2, 12 [docket no. 1]; see also Order dated April 10, 2014 [docket no. 42]). Plaintiffs seek, inter alia, allegedly unpaid compensation and related liquidated damages authorized by the statute. (Compl. at § VII).


Discovery relating to document production proceeded in very slow motion, with substantial delays occasioned by defendants'

1

repeated failures to meet deadlines. (See infra pp. 16-17).
Nevertheless, on May 2, 2014, plaintiffs sent their proposed
"Notice of Wage & Hour Lawsuit" and "Consent to Join" forms to
the putative class. (Moscow Decl. ¶ 6 [docket no. 110]; see also
Order dated April 10, 2014). In total, forty-three individuals
opted in. (See docket nos. 30, 46-77, 79-89).[1] Before us now is a
Rule 37 motion by defendants to dismiss a substantial number of
them. (Docket nos. 101-03, 110-12).

## BACKGROUND TO THE MOTION TO DISMISS

On April 17, July 8, and August 20, 2014 -- depending on
the date of opt-in -- defendants served the opt-in plaintiffs with
interrogatories and requests for production of documents. (See
Chiu Decl. ¶¶ 2-4 [docket no. 103]).[2] Responses to the July 8
requests were due on August 11, 2014[3] and responses to the August
20 requests were due on September 22, 2014. (See Letter dated Sept.
17, 2014).

---

[1] The first opt-in, Mr. Victor Spinelli, joined the case prior to the issuance
of the notice and consent forms. (Docket no. 30).

[2] Mr. Spinelli was served with interrogatories and requests for document
production on April 17, 2014. (See Chiu Decl. ¶ 2). While the due date for
responses from Mr. Spinelli is not clear from the record before us, defendants
informed the court on September 17, 2014 that he had complied with their
requests. (See Letter dated Sept. 17, 2014 [docket no. 90]).

[3] Prior to the court's involvement in the issue of opt-in discovery responses,
defendants agreed to extend plaintiffs' time to respond to the July 8 requests
until September 19, 2014. (Letter dated Sept. 17, 2014 [docket no. 90]).

At a conference before us on September 19, 2014, plaintiffs' counsel stated that -- since joining the suit -- thirteen of the opt-ins had indicated a desire to opt out. (Sept. 19, 2014 Tr. 5 [docket no. 96]). Additionally, he reported that nine of the remaining thirty opt-ins were not responding to plaintiffs' counsel's overtures to gather discovery (id.), efforts that we later learned had started by mid-July. (See Nov. 19, 2014 Tr. 28-29).[4] We therefore set October 3, 2014 as the date by which all opt-ins were required to provide full discovery responses. (Id. at 7). We further stated that if such responses were not timely served, defendants could seek to dismiss the uncooperative plaintiffs -- a request that we explicitly stated was likely to be granted. (Id. at 7, 18).

In efforts to comply with this deadline, plaintiffs' counsel sent a letter to each non-compliant plaintiff on September 22, 2014. (Opp. Mem. 3; Moscow Decl. ¶ 8). This outreach was followed by more than one telephone call to each. (Opp. Mem. 3; Moscow Decl.

---

[4] Because of the varied and somewhat contradictory numbers cited in the motion papers, we point out the following for the sake of clarity: In the September 19 transcript, reference is made to nine unresponsive opt-ins. (Sept. 19, 2014 Tr. 5, 17-18). Plaintiffs' memorandum and attached declaration suggest instead that there were seven such opt-ins by the date of that conference. (Opp. Mem. 2-3 [docket no. 111]; Moscow Decl. ¶ 9.). Seven, indeed, is certainly the number of opt-ins who failed to properly respond by the October 3 deadline. (See, e.g., Moscow Decl. ¶ 9; Opp. Mem. 5; Reply Mem. 2-3 [docket no. 112]). Therefore, whether the number stated at the September 19 conference was exaggerated or whether two opt-ins subsequently responded by October 3 is irrelevant.

¶ 8). The October 3 date came and went, and, on October 29, 2014, defendants moved to dismiss those opt-ins from whom they had not received the requested discovery. (Docket nos. 101-03). During the pendency of the motion, one of the opt-ins, who had not previously responded, provided a set of responses. (See Opp. Mem. 3).

At a conference held on November 19, 2014, we indicated to counsel for the parties that we would shortly be issuing a report and recommendation, recommending the dismissal of six opt-in plaintiffs, along with the fourteen opt-ins who have explicitly informed their counsel that they no longer wish to be in the case. (See Nov. 19, 2014 Tr. 33 [docket no. 113]).[5] This is that report.

## DEFENDANTS' MOTION

Defendants seek dismissal of certain plaintiffs, with prejudice, under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure. (Notice of Mot. [docket no. 101]; Defs.' Mem. 1-2 [docket no. 102]). Citing Rule 37(b)(2)(C), they also seek an award of fees and costs associated with the current motion. (See Notice of Mot.; Defs.' Mem. 1, 4).

---

[5] Although plaintiffs' counsel reported at the September 19 conference that thirteen opt-ins wished to withdraw, the current motion papers list fourteen in that category. (Opp. Mem. 3).

4

In defendants' motion and supporting memorandum, they target eighteen non-compliant opt-in plaintiffs for dismissal. (Defs.' Mem. 1).[6] Defendants argue that, because these plaintiffs failed to comply with the court's October 3, 2014 order despite notice that such a failure would likely result in dismissal, dismissal is an appropriate sanction under Rule 37(b)(2)(A) and attendant case law. (Id. at 2-4).

## PLAINTIFFS' OPPOSITION

In response to defendants' motion, plaintiffs note that they do not object to the dismissal of fourteen opt-ins who have informed counsel that they wish to opt out. (Opp. Mem. 3). These are: Lester Haynes; Thomas Mascia; Michael Reid; Richard J. Dempsey; Efrain Ortiz, Jr.; John A. Villa; Daniel Nadal; William Bennett; Thomas Scaccianoce; Antonio Bustillo; Vincent Crawford; Murshid Alladeen; Michael Cirminiello; and Dorothy DiMaggio, on behalf of the Estate of John DiMaggio. (Id.).

---

[6] Defendants do not delineate which of the eighteen were among those who affirmatively told plaintiffs' counsel of their desire to opt-out and which simply failed to respond to plaintiffs' discovery efforts. In any event, this list includes the following plaintiffs: (1) Lester Haynes; (2) Jasper Freeman; (3) Thomas Mascia; (4) Michael Reid; (5) Richard J. Dempsey; (6) Steven Alesci; (7) Andres Gonzalez; (8) Efrain Ortiz, Jr.; (9) John A. Villa; (10) Daniel Nadal; (11) William Bennett; (12) Thomas Scaccianoce; (13) Richard Raiano; (14) Gladstone Dawson; (15) Antonio Bustillo; (16) Ignaciao Tiongson; (17) Vincent Crawford; and (18) David Portalatin. (See Defs.' Mem. 2 n. 2).

Plaintiffs do, however, object to the dismissal of seven of the opt-ins. (Opp. Mem. 1). These are: Steven Alesci, Gladstone Dawson, Jasper Freeman, Andres Gonzalez, David Portalatin, Richard Raiano, and Ignacio Tiongson. (Id. at 3-4).[7]

Plaintiffs assert that Mr. Alesci should remain in the case because he "responded to Defendants' discovery requests." (Id. at 3). Plaintiffs further argue that the remaining six opt-ins should be left in the case because (1) counsel is still attempting to contact these individuals[8]; (2) extending the time by which they can respond to defendants' discovery requests would not unnecessarily prolong discovery; and (3) some vague notion of equity requires this result in the wake of defendants' own delays and discovery failures. (Id. at 4-6).

Plaintiffs do not address defendants' Rule 37(b)(2)(C) fee request, other than suggesting that defendants' motion should be

---

[7] Obviously, fourteen plus seven does not equal eighteen. Apparently -- and quite appropriately, given the context -- plaintiffs deemed defendants' motion to be seeking dismissal of any non-compliant plaintiffs or formerly compliant plaintiffs who, subsequent to the filing of the motion, advised counsel of their desire to withdraw from the case. (See Opp. Mem. 1 n.1). This latter category includes the following opt-ins: (19) Murshid Alladeen; (20) Michael Cirminiello; and (21) Dorothy DiMaggio, on behalf of the Estate of John DiMaggio. (See id.). Effectively, defendants seek dismissal of twenty-one opt-ins; and it is to this number that plaintiffs respond.

[8] Plaintiffs' memorandum states that, subsequent to defendants' motion, counsel sent a letter to these opt-ins on November 5, 2014 and "is also making telephone calls." (Opp. Mem. 4). Plaintiffs' counsel also conceded at the November 19 conference that, while they had spoken by phone with these individuals, they had still not received the required discovery. (Nov. 19, 2014 Tr. 29).

"further denied insofar as Defendants seek costs and fees incurred in connection with this Motion." (Id. at 7).

## RELEVANT LEGAL STANDARDS

Defendants seek dismissal under Rule 37. Alternatively, the court may view Rule 41(b) as an appropriate source of authority, since it authorizes dismissal for failure to prosecute.

In pertinent part, Rule 37 states that if a party "fails to obey an order to provide or permit discovery," the court may "dismiss[] the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A). As emphasized by the Second Circuit, "[i]mposing sanctions pursuant to Rule 37 is within the discretion of the district court and a decision to dismiss an action for failure to comply with discovery orders will only be reversed if the decision constitutes an abuse of that discretion." World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 159 (2d Cir. 2012).

It is well established that, when exercising discretion pursuant to Rule 37 sanctions, our court is guided by the following factors: "(1) the willfulness of the non-compliant party or the

reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of ... noncompliance." Id. (quoting Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009); see also Ruiz v. Citibank, N.A., 2014 WL 4635575, *2 (S.D.N.Y. Aug. 19, 2014).

Similarly, Rule 41(b) calls for dismissal "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." When considering dismissal under Rule 41(b), the court looks to a set of factors parallel to those used for Rule 37 sanctions:

> (1) [T]he duration of the plaintiff's failures, (2) whether plaintiff had received notice that further delays would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) ... [consideration of] the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard, ... and (5) ... the efficacy of lesser sanctions.

LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 209 (2d Cir. 2001); D'Attore v. City of New York, 2012 WL 5871604, *4 (S.D.N.Y. Sept. 27, 2012).

We are mindful that "[d]ismissal is a drastic remedy." World Wide, 694 F.3d at 159. However, we emphasize that the Second Circuit's reticence to uphold dismissal sanctions for discovery delays has generally been focused on contexts in which those delays

8

were attributable to attorney "sloppiness or negligence." Id. at
160; see also Picardo v. C.R. Bard, Inc., 563 F. App'x 58, 62 (2d
Cir. 2014). In such cases, it is true, dismissal is less
appropriate and "sanctions should be imposed on the attorney, and
not bar [the plaintiff] from a full presentation of its case." Id.
In contrast, "[a]lthough a party's simple failure to respond to a
discovery request will ordinarily not be deemed willful, prolonged
failure to respond after specifically being ordered by the court
to do so and warned of the consequences can render dismissal
appropriate." Ruiz, 2014 WL 4635575, at *3 (internal citations
omitted).

The linchpin of this analysis, as the court in Ruiz made
plain, is whether the non-compliant party has been warned of the
consequences of its failure to respond. Id. The Second Circuit has
referred to this element as the "[m]ost critical[]" of those listed
in Agiwal, see World Wide, 694 F.3d at 160, and "has repeatedly
upheld dismissal as an appropriate sanction where the non-
compliant parties were warned of the possibility." Ruiz, 2014 WL
4635575, at *3 (citing cases). Indeed, in Ruiz, five FLSA opt-in
plaintiffs failed to respond to discovery requests, orders to
comply set by the court, and a warning that continued delinquency
might result in dismissal with prejudice. Id. at *1. As a result,

dismissal of these individuals was granted. Id.; accord LeSane, 239 F.3d at 210 ("[I]t is difficult to imagine how a dismissal [under Rule 41(b)] following an unheeded warning could be an abuse of discretion.") (internal quotations omitted).

As for the significance of defendants' discovery failures in assessing the consequences of plaintiffs' own failures, we note only this: "Discovery is not equity: one party's noncompliance with discovery requirements does not excuse the other's failure to comply. Each party's obligation is independent." Gropper v. David Ellis Real Estate, L.P., 2014 WL 518234, *3 (S.D.N.Y. Feb. 10, 2014); see also John Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 145, 148 (S.D.N.Y. 2014) ("[I]t is well-established that a party cannot unilaterally refuse to fulfill its discovery obligations as retaliation for another party's discovery violations."); Lumbermens Mut. Cas. Ins. Co. v. Maffei, 2006 WL 2709835, *5 n.21 (D. Alaska Sept. 20, 2006) ("The court does not consider 'tit-for-tat' objections to discovery to be legitimate objections.").

## ANALYSIS

Under the applicable standards, we recommend that the motion to dismiss be granted as to twenty of the twenty-one so-called "non-compliant" opt-in plaintiffs. This number encompasses those fourteen opt-ins who have affirmatively indicated through their counsel a desire to leave the case, and six opt-ins who have failed for many months to cooperate with their counsel's efforts to elicit information needed to respond to defendants' discovery demands.

I.   Recommendation of Dismissal for the Fourteen Opt-In Plaintiffs Not in Dispute

Plaintiffs do not object to the dismissal of the following fourteen individuals: Lester Haynes, Thomas Mascia, Michael Reid, Richard J. Dempsey, Efrain Ortiz, Jr., John A. Villa, Daniel Nadal, William Bennett, Thomas Scaccianoce, Antonio Bustillo, Vincent Crawford, Murshid Alladeen, Michael Cirminiello, and Dorothy DiMaggio, on behalf of the Estate of John DiMaggio. (See Moscow Decl. ¶ 10). They should therefore be dismissed.

11

## II. Recommendation of Dismissal of the Six "Non-Compliant" Opt-In Plaintiffs

We recommend that the following six opt-ins be dismissed with prejudice: Gladstone Dawson, Jasper Freeman, Andres Gonzalez, David Portalatin, Richard Raiano, and Ignacio Tiongson. (See Moscow Decl. ¶ 13). While plaintiffs provide several reasons why these opt-ins should remain in the case, none is persuasive.

Five of these six plaintiffs were initially served with interrogatories and document requests on July 8, 2014. (Chiu Decl. ¶ 3). The sixth, David Portalatin, was served on August 20, 2014. (Id. at ¶ 4).⁹ On September 19, 2014, we set October 3 as the final deadline by which these individuals were required to respond. (Sept. 19, 2014 Tr. 7). They failed to do so despite our warning that such delinquency would likely result in a dismissal (id. at 18) and despite their attorneys' best efforts -- efforts that began in mid-July and that included letters and numerous phone calls. (Moscow Decl. ¶¶ 8, 13; Nov. 19, 2014 Tr. 28-29).¹⁰ Plaintiffs'

---

⁹ In defendants' zeal to emphasize the length of the non-compliance, they plainly imply in their reply memorandum that any number of these six opt-ins may have been served as early as April 17, 2014. (Reply Mem. 2). However, a close reading of the declaration they submitted with their motion reveals that only one opt-in (not in issue here), Victor Spinelli, was provided with discovery requests at that early juncture. (Chiu Decl. ¶ 2).

¹⁰ Perhaps somewhat ironically, plaintiffs' counsel's diligence -- which we accept and note is in contrast with the facts in cases such as World Wide and Picardo -- militates against a favorable result for their side. As mentioned, the Second Circuit generally disfavors dismissal when the failures are due to counsel's

12

counsel appears to have spoken with all of these individuals at some point; however, the results of these discussions have been wholly fruitless. (Nov. 19, 2014 Tr. 29). To quote plaintiffs' counsel from an earlier date, "we've been having difficulties, quite frankly." (Sept. 19, 2014 Tr. 5). Indeed.

This non-compliance unquestionably falls within the ambit of Rules 37(b)(2)(A) and 41(b). These parties have "fail[ed] to obey an order to provide or permit discovery," and it is therefore within the court's discretion, depending on circumstances, to order their dismissal. Fed. R. Civ. P. 37(b)(2)(A). We therefore turn to the factors provided by the Second Circuit in Agiwal and World Wide. First, while we cannot definitively say whether the neglect of these opt-ins is "willful," given the prior warning and the conceded failure of these plaintiffs to act even after the briefing of defendants' dismissal motion, they certainly appear to be deliberately disregarding their discovery obligations. Moreover, this delay is similar to the "prolonged failure to respond" that warranted dismissal by the district court in Ruiz. See Ruiz, 2014 WL 4635575, at *3. We agree with defendants' assessment that

---

neglect. See supra pp. 8-9. This is simply not the case here. Reasonable efforts have been made by counsel again and again. The parties themselves are responsible for the delays.

"[t]here is absolutely no indication these individuals wish to proceed in this action." (Reply Mem. 3).

Second, we agree with defendants that lesser sanctions would not be effective here. (See Defs.' Mem. 3). These plaintiffs have manifested, by their inaction in the face of warnings and a dismissal motion, an evident decision not to pursue this case.

Plaintiffs contend that some lesser, unspecified form of relief would not unnecessarily prolong discovery. (Opp. Mem. 5). They suggest that, with discovery now set to close on March 15, 2015 (see Order dated Nov. 19, 2014), there is ample time for these opt-ins to comply with the requests. (Opp. Mem. 5). However, a cursory glance at the court's most recent discovery schedule (Order dated Nov. 19, 2014) -- discussed at some length at a conference on the same date -- reflects a reality about this case that is, perhaps, truer here than in most: Although not always necessary and often inefficient, the stages of discovery are defined as a series of sequential steps, with one to be completed before the next must be engaged. At this stage, and after more than two years, to permit an undefined further delay in the first, and essential, step would entirely undercut the court's ability to manage pretrial

14

proceedings in an even minimally efficient and cost-effective manner.

Third, the duration of non-compliance has been lengthy: over four months for five of the six plaintiffs and three months for the remaining plaintiff.[11] We acknowledge that this is less than the respective periods of time found sufficient for dismissal in some of the above-mentioned cases. See Agiwal, 555 F.3d at 303 (over six months); Ruiz, 2014 WL 4635575, at *3 (between one year and eighteen months). And it is possible that, in the absence of the court's September 19 order and warning about dismissal, the result here would be a closer question. However, the weight of the other relevant Agiwal factors -- especially the last -- makes the result here clear.

The last and "[m]ost critical[]" Agiwal factor, see World Wide, 694 F.3d at 160 -- whether the non-compliant plaintiffs has been warned of the possible consequences of their non-compliance -- has been met here. It was made abundantly clear to all parties that if any opt-ins had still not responded by October 3, 2014,

---

[11] We do not find persuasive plaintiffs' suggestion that the clock only began running on October 3, 2014. (See Opp. Mem. 5). Especially in light of the repeated outreach by plaintiffs' counsel and our warning on September 19, 2014 of the likely result of a motion to dismiss, plaintiffs have long been on notice of what was required of them.

15

any motion to dismiss would likely be successful. (See Sept. 19, 2014 Tr. 18). Moreover, the pendency of the dismissal motion served as further warning of the danger that these plaintiffs were exposed to by their continued inaction. In addition, we note that because our ruling is in the form of a report and recommendation, plaintiffs will have still a further opportunity to respond to the outstanding discovery demands and then argue that such belated efforts justify a more limited sanction than dismissal.[12]

Finally, we turn to plaintiffs' repeated suggestion that defendants' own failures to comply with various discovery orders and deadlines should influence the result here. (See Opp. Mem. 1-2, 5-6). Plaintiffs assert that "[d]efendants ignored their discovery obligations and at least three Court orders to produce outstanding discovery." (Id. at 1). They label this performance as a "history of delay and incomplete disclosure" and detail the precise dates of defendants' various sins. (Id. at 1-2). Indeed,

---

[12] We also briefly address the factors considered in a Rule 41(b) analysis that are not squarely contained in Rule 37 Agiwal assessments, namely the prejudice to defendants in the event of further delay and the balance between due process and court congestion. See LeSane, 239 F.3d at 209. True, any prejudice to defendants is likely analogous to -- if not less harsh than -- that visited upon plaintiffs in the wake of defendants' own discovery lapses. See infra p. 16. However, this does not outweigh the balance of the applicable considerations. Moreover, as to the last factor, "[a]lthough we cannot say that this specific case is a major contributor to the burden of the court's current calendar ... [these plaintiffs'] defiance of court orders has undercut our ability to ensure the prompt disposition of this case." D'Attore, 2012 WL 5871604, at *5. It is time to move this case along.

16

we do not disagree with plaintiffs' characterizations of the course of discovery. We have been repeatedly embroiled in disputes triggered by defendants' dilatory responses to document requests. (See, e.g., Oct. 31, 2013 & Jan. 7, 2014 Trs. [docket nos. 25, 27]; Endorsed Order dated March 26, 2014 [docket no. 36]). And we stated as much on the record at the recent conference. (Nov. 19, 2014 Tr. 2) ("[T]his has been going on for a very long time, and...deadlines have been regularly not met, at least on defendant[s'] side.").

Defendants do not squarely address any of these issues, instead asserting that the propriety, or lack thereof, of their discovery responses is "irrelevant to the Court's analysis." (Reply. Mem. 2). We agree. As is abundantly clear from the cases mentioned above, see supra p. 10, and, indeed, from the very nature of our focused adversarial system, the proper way for plaintiffs to object to defendants' behavior in discovery was, and is, to make applications to the court requesting an order to compel production, sanction the lack thereof, or move for some other directed relief.[13]

---

[13] We note that, on April 4, 2014, plaintiffs raised the question of sanctions with the court. We told counsel then, as we suggest here, "[i]f there is going to be an application for sanctions, it should be a formal motion." (Apr. 4, 2014 Tr. 22 [docket no. 43]). No such motion was ever filed.

17

III. Recommendation that Plaintiff Steven Alesci Remain in the Case

As regards the final opt-in at issue -- plaintiff Steven Alesci -- we recommend against his dismissal at this time. Although we did order responses to defendants' discovery requests be served no later than October 3, 2014 (Sept. 19, 2014 Tr. 7) -- and Mr. Alesci did not respond until November 12, 2014 (Moscow Decl. ¶ 12)[14] -- we believe that the undeniably harsh remedy of dismissal is not appropriate.

Defendants urge the dismissal of this plaintiff because of their dissatisfaction with the quality of his discovery responses. (See Reply Mem. 1-3). Pointing to our order that non-compliant plaintiffs provide "the full discovery or defendants can ask that they be dismissed from the case" (Sept. 19, 2014 Tr. 7), defendants suggest that Mr. Alesci's responses have been "cursory" and devoid of documentation. (Reply Mem. 3).

However, as we learned at the November 19 conference, counsel for the parties had yet to discuss the purported inadequacies of this plaintiff's responses with each other. (Nov. 19, 2014 Tr. 32).

---

[14] At the November 19, 2014 conference, plaintiffs' counsel stated that this response was provided on November 10, 2014. (Nov. 19, 2014 Tr. 32).

18

See Fed. R. Civ. P. 37(a) (requirement to confer in good faith).
Moreover, defendants' motion papers are entirely silent as to the
specific failings of these responses. See S.D.N.Y. Local Civ. Rule
37.1 (detailing required substance of Rule 37 motions, including
quoting pertinent requests and responses and grounds for relief as
to each request or response). We therefore explained that we would
not be recommending dismissal as to this plaintiff. (Id. at 33).
We noted, though, that if the parties could not resolve any
outstanding issues among themselves, defendants would be free to
return to the court for whatever relief they deem appropriate.
(Id.). Included in the written order sent out on the same day, we
instructed that the parties have until December 11, 2014 to seek
the intervention of the court in whatever disputes remain relating
to interrogatories or document requests. (Order dated Nov. 19,
2014).

All of this considered, we believe that dismissing plaintiff
Alesci at this stage would be too "drastic [a] remedy." See World
Wide, 694 F.3d at 159.

19

IV.   Attorneys' Fees and Costs

Defendants assert that "an award of costs and fees associated with this Motion to Defendant is not only warranted, but required by the Federal Rules, as the non-compliance of the Non-Compliant Opt-Ins cannot be substantially justified." (Defs.' Mem. 4). We disagree.

Under Rule 37(b)(2)(C), reimbursement of expenses to the prevailing party must be ordered unless the failure "was substantially justified" or "other circumstances make an award of expenses unjust." We conclude that, given the nature and history of this case, an expense award to defendants would be "unjust".

First, defendants' performance in discovery was woeful -- suggesting that if plaintiffs had moved for relief, they would have been entitled not only to orders to compel, but to multiple awards of fees and expenses. That plaintiffs did not pursue such formal relief does not preclude our taking this into consideration on the question of whether billing marginally solvent plaintiffs would be "unjust." Indeed, plaintiffs' many informal pleas for court intervention, coupled with the requirement to first consult their

20

adversaries, plainly compelled them to spend at least as much attorney time as the defendants expended on the current motion.

Second, these individuals were not original plaintiffs, and while they initially entered the case as opt-ins, they have not put defendants to any significant expense, and in any event we are recommending that they be dismissed from the case.

Third, we note the beneficent purpose of the FLSA, which authorizes a collective action to encourage entry into the suit by affected employees. Since the statute is designed to protect a vulnerable part of the work force, the court should be reluctant to punish individuals who initially decide to join and then back out. Accord A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 493 (1945) (referring to the FLSA as "humanitarian and remedial legislation"); Shahriar v. Smith & Wolensky Restaurant Grp., Inc. 659 F.3d 234, 243-44 (2d Cir. 2011) (describing and citing cases that emphasize the need to limit roadblocks in the way of plaintiffs who may be hesitant to assert their rights under the FLSA).

Finally, this motion can properly be deemed to fit within Rule 41(b), which does not have the same presumptive fee-shifting

21

requirement as Rule 37. See, e.g., St. Prix v. Sirius XM Satellite Radio, 2014 WL 405812, *4 (S.D.N.Y. Jan. 29, 2014) (noting the difference between Rule 37 and Rule 41(b) motions in this respect); Shasgus v. Janssen, L.P., 2009 WL 2878542, *4 (W.D.N.Y. Sept. 2, 2009).

## CONCLUSION

For the reasons noted, we recommend defendants' motion be granted in part and denied in part, as specified.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable George B. Daniels, Room 1310, 500 Pearl Street, New York, New York, 10007-1312, and to the undersigned, Room 1670, 500 Pearl Street, New York, New York, 10007-1312. Failure to file timely objections may constitute a waiver of those objections, both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636 (b)(1); Fed. R. Civ. Pro. 72, 6(a), 6(e); Thomas v. Arn, 474 U.S. 140 (1985);

DeLeon v. Strack, 234 F.3d 84, 86 (2d. Cir. 2000) (citing Small v. Sec'y. of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)).


**Dated:    New York, New York**
**December 1, 2014**

**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**


Notice of the foregoing Report & Recommendation has been provided to counsel through ECF.